**GENERAL MILLS, INC., a corporation, Plaintiff,**

v.

**HENRY REGNERY CO., a corporation, Defendant.**

**No. 76 C 2999.**

United States District Court, N. D. Illinois, E. D.

Sept. 15, 1976.

Dean A. Olds, Chicago, Ill., for plaintiff.

Ashcraft & Ashcraft, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge.

This action arises under the trademark laws of the United States, in particular the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Plaintiff, General Mills, Inc., is the owner of Registrations No. 515,266, No. 945,279, and No. 945,806 for the trademark "BETTY CROCKER." In its complaint plaintiff alleges that it and its related companies have been and are now engaged in the business of producing, advertising and selling cookbooks and recipe cards throughout the United States and in foreign countries. Plaintiff also states that since 1939 it has sold these publications under the name of "BETTY CROCKER" and that extensive

advertising was done in this and other countries to promote plaintiff's publications. As a result, plaintiff claims that the trademark "BETTY CROCKER" has become "an asset of substantial value as a symbol of plaintiff, its quality and goodwill."

Plaintiff's cause of action is based on the allegation that notwithstanding its common law and statutory rights in the trademark "BETTY CROCKER," defendant intends to publish and sell a cookbook with the title "Betty Cooker's Crock Book For Drunks" in commerce in the United States. Plaintiff alleges that such action by defendant would constitute a colorable imitation of and would be confusingly similar to plaintiff's trademark causing substantial and irreparable injury to plaintiff all in violation of 15 U.S.C. §§ 1114, 1125, *as amended*, and the common law. Both permanent injunctive relief and damages are sought.

The court has before it plaintiff's motion for preliminary injunction in which it seeks to enjoin defendant, *pendente lite*, from publishing its cookbook using the infringing title "Betty Cooker's Crock Book For Drunks." As the Seventh Circuit has stated:

> The appropriateness of granting or denying a preliminary injunction "depends upon a balancing of several factors, including the likelihood of success on the merits, the lack of adequate remedy at law, the prospect of irreparable harm if the injunction is not issued and a comparison of the relative hardships imposed on the parties."

*Washington v. Walker*, 529 F.2d 1062, 1065 (7th Cir. 1976), quoting *Banks v. Trainor*, 525 F.2d 837, 841 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). Because this court finds that on the meager record before it plaintiff has not established a likelihood of success on the merits, plaintiff's motion for preliminary injunction is denied.

Although plaintiff has alleged violations by the defendant of 15 U.S.C. § 1125 and the common law, plaintiff relies totally upon 15 U.S.C. § 1114 to establish its right to relief in its present motion. Section 1114 provides:

> (1) Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Thus, in order to establish a cause of action under 15 U.S.C. § 1114, *as amended*, plaintiff must show that defendant has used (1) a reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; and (5) where such use is likely to cause confusion, or to cause mistake or to deceive. As there is no dispute concerning the first four elements of a section 1114 cause of action, the determination of this motion depends upon whether plaintiff has shown that there is a likelihood of confusion, mistake or deception by the publication of defendant's book with the allegedly infringing title.

As the court in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976) stated in a section 1114 action, "a key issue . . . is whether it is likely that the public will be confused into believing

that the products upon which the defendant's mark, Ever-Ready, appears emanate from the same source as products upon which plaintiff's mark, EVERREADY, appears." *Id.* at 381. *See also FS Services, Inc. v. Custom Farm Services, Inc.,* 471 F.2d 671 (7th Cir. 1972); *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir. 1965). Such likelihood of confusion is determined by a consideration of such factors as "the type of trademark in issue, the similarity of design, similarity of products, identity of retail outlets and purchasers, identity of advertising media utilized, defendant's intent, and actual confusion." *Id.* at 381–82.

After an examination of the evidence presented by the plaintiff, it is this court's opinion that the plaintiff has failed to establish a likelihood of success on the issue of whether the public is likely to be confused by the defendant's book and plaintiff's mark. Thus, although it appears that plaintiff's mark is strong and the plaintiff's and defendant's products are similar, the dissimilarity in design between the books and the lack of evidence presented by plaintiff to show actual confusion or identity of retail outlets, purchasers and advertising media utilized leads this court to the conclusion that at this stage of the litigation and on this record, interim relief is inappropriate.

First, an examination of the defendant's book cover and the cover of several cookbooks published by the plaintiff shows that the defendant's book is much smaller in size than plaintiff's works. Moreover, whereas each of plaintiff's books has the name "BETTY CROCKER" on the top of the cover, the defendant's book has the name "Morey Amsterdam," with the entire title of defendant's book being "Morey Amsterdam's Betty Cooker's Crock Book For Drunks."[1] Furthermore, while the covers of plaintiff's books show domestic family scenes or pictures of food, defendant's book shows a picture of Morey Amsterdam, a well-known comedian, pouring spirits into a salad. Thus, although it is true that the word "Betty" appears on plaintiff's books and defendant's work, viewed in their totality, 531 F.2d at 382; *Quaker Oates v. General Mills, Inc.,* 134 F.2d 429, 432 (7th Cir. 1943), there is not a likelihood that the public will be confused or misled to believe in any way that the books are in any way related. And, while it is true that defendant is attempting a parody of plaintiff's books and mark, there is no evidence before this court to indicate that defendant is intentionally attempting to confuse the public as to the source of its work, or to deceive the public in any other way.

█ Second, although it is true that actual *confusion* is not necessary to establish a section 1114 violation, *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 611 (7th Cir. 1965), such evidence is helpful in determining the public's state of mind. In the case at bar, however, no such evidence of actual confusion and no surveys of consumer attitudes were presented by plaintiff in support of its motion. All that was presented were two affidavits of plaintiff's employees stating that plaintiff's trademark is quite strong and presents an image of conservatism and wholesomeness. This meager showing, in the face of the disparate appearance between the plaintiff's mark and defendant's cover, coupled with the lack of any evidence as to purchaser or advertising media identity, is insufficient to move this court to find a likelihood of success on the merits and to grant preliminary injunctive relief.

Finally, the cases cited by the plaintiff are distinguishable. In *Coca-Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183 (E.D. N.Y.1972), not only did the defendant use the same color scheme and script in preparing its "Coca-ine" poster, but plaintiff presented affidavits which indicated that consumers had believed that the infringing poster had been made by the Coca-Cola Company. In *Chemical Corp. of Amer. v.*

---

1. Moreover, in an affidavit filed by defendant's president, defendant represents that the title of the book has been changed to "Morey Amsterdam's Cookbook For Drinkers or Betty Cooker Crock Book." This name change makes the likelihood of confusion even more remote.

*Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962), the district court found that the defendant's advertisement, when taken as a whole, had duplicated the plaintiff's advertisement and created confusion in the public mind as to the source of defendant's ad. In the case at bar, the defendant's cover is not so similar to plaintiff's to make one conclude that the public will be confused.

However, plaintiff relies primarily on *Boston Pro Hockey Ass'n v. Dallas Cap & E. Mfg., Inc.*, 510 F.2d 1004 (5th Cir. 1975). In *Boston Pro Hockey*, plaintiffs were hockey teams, all but one of which had registered their team symbols as service marks. Defendant, without authorization, made cloth emblems containing the marks of the teams and sold them throughout the United States. The district court held that there was no likelihood of confusion shown, within the meaning of the Lanham Act, "because the usual purchaser, a sports fan in his local sporting goods store, would not be likely to think that defendant's emblems were manufactured by or had some connection with plaintiffs." *Id.* at 1012. The court of appeals reversed, however, stating:

> [T]he district court overlooked the fact that the act was amended to eliminate the source of origin as being the only focal point of confusion. The confusion question here is conceptually difficult. It can be said that the public buyer *knew* that the emblems portrayed the teams' symbols. Thus, it can be argued, the buyer is not confused or deceived. This argument misplaces the purpose of the confusion requirement. The confusion or deceit requirement is met by the fact that the defendant duplicated the protected trademarks and sold them to the public knowing that the public would identify them as being the teams' trademarks.

The certain knowledge of the buyer that the source and origin of the trademark symbols were in plaintiffs satisfies the requirement of the act. The argument that confusion must be as to the source of the manufacture of the emblem itself is unpersuasive, where the trademark, originated by the team, is the triggering mechanism for the sale of the emblem. *Id.* Plaintiff argues, therefore, that it is not required to show public confusion as to source of origin of defendant's book to establish a section 1114 claim, but that all it must show is the use of plaintiff's mark by defendant knowing that the public would identify the trademark as plaintiff's and associate it with plaintiff's cookbooks.

■ But, even if this court was predisposed to follow the approach enunciated in *Boston Pro Hockey*, an approach even the Fifth Circuit recognized "may slightly tilt the trademark laws from the purpose of protecting the public to the protection of the business interests of plaintiffs," *id.* at 1011, the case at bar is factually dissimilar to the situation in *Boston Pro Hockey*.[2] Here the defendant has not exactly duplicated the plaintiff's mark and this court can not say that there is a likelihood of confusion because of the *"certain knowledge* of the buyer that the source and origin of the trademark symbols were in plaintiff . . . ."* Moreover, the Fifth Circuit recognized the unique nature of the case before it when it recognized that the trademark *itself* was sold rather than the usual situation, as in the case at bar, where the trademark is being used to sell something other than the mark. *Id.* at 1010. Accordingly, this court finds that the *Boston Pro Hockey* decision is distinguishable and inapplicable to the case at bar.

**2.** It should be noted that a broad reading of the *Boston Pro Hockey* decision would have the effect of changing the focus of the trademark laws from the protection of the public to the protection of the trademark owner's business interest. If this is the import of the *Boston Pro Hockey* decision, this court declines to follow its lead. As the Fifth Circuit recognized, section 1114 still requires some element of public confusion even if it is not confusion as to *ori-*

gin. *See Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976); *FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671 (7th Cir. 1972). And, if there is no confusion established in the minds of the public, there is no violation of section 1114. To hold otherwise, especially on the meager record before this court, would convert trademark law into copyright law.

In conclusion, it is the court's opinion that plaintiff has failed to establish a likelihood of success on the merits of its claim and that interim injunctive relief would be inappropriate.[3] Plaintiff's motion is, therefore, denied.

It is so ordered.

Edward H. Moody and Donald B. Oakley, Morristown, Tenn., for plaintiff.

Roy T. Campbell, Jr., Newport, Tenn., N. R. Coleman, Jr., Greeneville, Tenn., and Ben W. Hooper, II, Newport, Tenn., for defendants.

---

**3.** It should be noted that the parties had indicated a willingness to have an evidentiary hearing on the issues presented in this motion. In light of the opportunity given both sides to present evidence in affidavit form, a hearing would not be helpful at this stage of the litigation.